IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Case No. 03-cv-02274-MSK-PAC

JOELY BITTNER

     Plaintiff,

v.

BLACKHAWK BREWERY AND CASINO, LLC  d/b/a MARDI GRAS CASINO and
EDWARD STANO and
DAVID R. ZORNES, individually,

     Defendants.

---

### OPINION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT

---

**THIS MATTER** comes before the Court pursuant to the Defendants' Motion for

Summary Judgment **(# 31)**, the Plaintiff's response **(# 35)**, and the Defendants' reply **(# 40)**.

### BACKGROUND

The following facts are undisputed or are construed in favor of the non-movant.

In 2000, the Plaintiff was hired as Housekeeping Manager with Defendant Blackhawk

Brewery and Casino, LLC at the Mardi Gras Casino ("Mardi Gras") in Black Hawk, Colorado.

At some point during the Plaintiff's employment, the one or more of the Defendants learned that

Hispanic employees at the Plaintiff's former employer, the Colorado Central Station Casino, had

1

filed a lawsuit alleging race discrimination, based in part on conduct by the Plaintiff.  Thereafter, a

Hispanic employee of  Defendant Mardi Gras filed a charge of discrimination, alleging improper

treatment by the Plaintiff, and other Hispanic employees complained to one or more of the

Defendants about treatment by the Plaintiff. The Plaintiff disputes the merit of these various

charges and complaints, but she does not dispute their existence.

   While the Plaintiff was employed by Mardi Gras, the casino retained Karen Montague, an

outside consultant, to investigate why it was experiencing high employee turnover in certain

departments.  As an apparently collateral result of her investigation of this issue, Montague

concluded that the Plaintiff was biased against Hispanics and expressed such opinion to Sandra

Mishler, Mardi Gras' Human Resources Manager.  Although Mardi Gras was reluctant to accept

Montague's accusation, it ultimately recognized that action needed to be taken with regard to the

Plaintiff.

   On October 30, 2002, the Plaintiff informed Defendant Zornes, General Manager of

Mardi Gras, that she was pregnant and intended to take a leave of absence pursuant to the

Family and Medical Leave Act ("FMLA"), beginning January 19, 2003, and running through

April 2003.

Then, in November, Defendant Stano, Director of Operations for Mardi Gras, summoned the

Plaintiff to a meeting with himself and Mishler.  At the meeting, Defendant Stano told the

Plaintiff that Mardi Gras intended to terminate her employment, as there was a "problem in [the

Plaintiff's] department with communication," between her and several Spanish-speaking employees.  Defendant Stano further advised the Plaintiff that, in lieu of termination, she could elect to resign.  The Plaintiff protested, stating that she needed to retain her health insurance through her pregnancy, to which Defendant Stano responded that he would talk to Defendant Zornes to see what could be done.

A few days later, on a Friday, Defendant Stano summoned the Plaintiff to another meeting and presented her with a draft resignation letter and a document purporting to be a release of claims.  The release provided that the Plaintiff would remain as an employee of Mardi Gras through the conclusion of her anticipated maternity leave under FMLA.  She would receive full pay and benefits throughout the leave period, but her resignation would become effective at the conclusion of the leave.  Defendant Stano encouraged the Plaintiff to take the documents home to review them, to consider having other people review them as well, and to return them the following Monday or Tuesday.

The Plaintiff took copies of the documents and discussed them with several individuals, including at least three co-workers, her boyfriend, her mother and father, and April, a friend of her father's who was "going to school to be an attorney for traffic."  Although several people encouraged the Plaintiff to discuss the issue with an attorney and the Plaintiff made calls to at least two attorneys, she was not able to arrange an appointment with a lawyer for at least two weeks.  Instead, after discussing the matter with April and raising concerns that the Defendants

would find some other reason to fire the Plaintiff after she signed the release, the Plaintiff and

April drafted additional provisions of the release to prevent that situation.   The Plaintiff signed

the release and returned it to Defendant Zornes on Monday.   The following day, the Plaintiff

contacted Defendant Stano to discuss whether the additional language she had drafted with April

could be added.   After consulting with counsel, Defendant Stano accepted the additional language

and added it to the release.   Pursuant to the terms of the release, the Plaintiff continued to work

at Mardi Gras until her FMLA leave began, and then received full pay and benefits for the

duration of her leave.

Thereafter, the Plaintiff commenced this action alleging two causes of action: (i)

discrimination on the basis of pregnancy in violation of 42 U.S.C. § 2000e(k); and (ii) violation of

the FMLA, 29 U.S.C. § 2615.   The Defendants then filed the instant summary judgment motion,

alleging that: (i) the Plaintiff has waived these claims pursuant to the terms of the release; (ii) her

resignation prevents her from establishing the "adverse employment action" element of her *prima

facie* case of discrimination; and (iii) the Plaintiff cannot establish that she was denied FMLA

benefits because she was granted leave time and waived any right to reinstatement through her

resignation.

## JURISDICTION

The Court has subject-matter jurisdiction over the claims pursuant to 28 U.S.C. § 1331.

## ANALYSIS

### A. Standard of review

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Cattret*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F. 3d 567, 569 (10th Cir. 1994); *see also In re Ribozyme Pharmaceuticals, Inc. Securities Litigation*, 209 F. Supp.2d 1106 (D. Colo. 2002). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv SAP, Inc.*, 210 F. 3d 1132 (10th Cir. 2000); *Carry v. U.S. Postal Service*, 812 F.2d 621, 623 (10th Cir. 1987).  A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. *Anderson*, 477 U.S. at 248.  The court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Houston v. Nat'l General Ins. Co.,* 817 F. 2d 83, 85 (10th Cir. 1987); *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995); *Grayson v. American Airlines, Inc.*, 803 F. 2d 1097, 1101 (10th Cir. 1986).

The analysis to be applied differs depending on whether the moving party is the party with the burden of proof at trial.  If the movant has the burden of proof on a claim or defense, the

movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(e).  Once the moving party has met its burden, to avoid summary judgment, the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute.  *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). However, where the non-movant bears the burden of proof at trial, the movant may simply challenge the non-movant's ability to present a *prima facie* claim or defense.  The non-movant then must come forward with sufficient, competent evidence to carry its burden. *Ribozyme*, 209 F.Supp.2d at 1111; *Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002).

Here, the parties agree that the Defendants bear the burden of proof with regard to the affirmative defense that the Plaintiff has waived her claims through the release, and the Plaintiff bears the burden of proof with regard to the substantive claims.

**B.  The validity of the release**

All three issues raised in the Defendants' motion turn largely (if not entirely) on the validity of the release signed by the Plaintiff.  The parties agree that the law governing such releases is best set out in *Torrez v. Public Service Co. of New Mexico*, 908 F.2d 687, 689 (10th Cir. 1990), which recognized the general proposition that "employment discrimination claims may be waived by agreement, but the waiver of such claims must be knowing and voluntary." (Citation omitted.)  The court cautioned that such waivers "are not lightly to be inferred," *id.*, and

6

set forth seven factors that should be examined in assessing the degree of the plaintiff's knowledge and voluntariness: (i) the clarity and specificity of the release language; (ii) the plaintiff's education and business experience; (iii) the amount of time available to the plaintiff for deliberation before signing; (iv) whether the plaintiff knew or should of known of her rights surrendered by the release; (v) whether the plaintiff was encouraged to seek, or indeed did seek, assistance from counsel; (vi) whether there was an opportunity for negotiation of the terms; and (vii) whether the consideration received by the employee exceeds that which she would be entitled to by law. *Id.* at 689-90. An eighth factor, not specifically articulated in *Torrez* but clearly considered by the court, is whether the employer exerted undue economic pressure on the plaintiff. 908 F.2d at 690 & n. 3. The question of whether such a waiver is knowing and voluntary is a question of fact. *Id.* at 690.

The undisputed facts pertaining to two factors unambiguously favor the Defendants. There can be little argument that the release entitled the Plaintiff to greater compensation than had she simply remained in Mardi Gras' employ and took maternity leave under FMLA. Under both the FMLA, *see* 29 U.S.C. § 2612(c), and Mardi Gras' employee policies, leave taken under the FMLA is unpaid. By signing the release, the Plaintiff received paid, rather than unpaid, leave and continued to enjoy health insurance paid for by Mardi Gras. In addition, it is clear that the Plaintiff was aware of her legal rights under FMLA at the time she signed the release. Her testimony is that she had learned of FMLA leave (and the concomitant right to reinstatement)

7

from a Department of Labor poster in the Mardi Gras breakroom, and that she had discussions with Defendants Zornes about her FMLA leave before the release issue arose.  Moreover, because the Plaintiff held a management position, the Court assumes she had received training or was at least aware of the existence of anti-discrimination laws, including those prohibiting discrimination on the basis of pregnancy, at the time she signed the release.

However, with regard to the remaining factors, there are genuine issues of material fact which require a trial.  For example, with regard to the clarity of the language, the operative provision of the release reads:

> In consideration of this Agreement, Bittner forever releases and waives all rights, claims, (sic) that she has, had, or may have against Mardi Gras, known or unknown, arising out of conduct which occurred during the term of her employment, conduct related to her resignation of employment and conduct which occurred prior to the date of the execution of this General Release and Waiver of Claims.

Similar language was at issue in *Torrez*, where the plaintiff released "any and all claims which I have or might have, arising out of or related to my employment or resignation or termination from employment by or from PNM."  908 F.2d at 688.  In reviewing that waiver, the 10th Circuit characterized such language as "clear and unambiguous," but noted that it made no specific mention of releasing any employment discrimination claims.  908 F.2d at 690.  It went on to give effect to the plaintiff's assertion that he understood the language to be waiving only claims relating to his severance package, not discrimination claims.

Here, the Court agrees that the language is unambiguous, but shares the observation in *Torrez* that the waiver does not expressly identify employment discrimination claims as being released.  Unlike *Torrez*, the Plaintiff has not claimed here that she understood the language to apply to only certain claims.  However, according to her deposition testimony, Plaintiff told Defendant Stano that she did not understand portions of the release, including the portion quoted above, and that rather than clarifying her lack of understanding, Defendant Stano merely read the passages to her again.  In this regard, the Court finds close parallels between this case and *Torrez*. Whether the Plaintiff clearly understood that she was surrendering an as-yet-inchoate discrimination claim by signing the release[1] is an issue of fact to be determined by a jury.

In addition, several of the *Torrez* factors are not necessarily the subject of factual dispute, but the undisputed facts regarding these factors could allow reasonable factfinders to draw differing conclusions from the facts.  For example, the undisputed fact is that the Plaintiff was given only a weekend to make her decision to sign the release.  Whether this time period was sufficient to permit the Plaintiff to adequately reflect on her decision is unclear, particularly as Defendant Stano contends that he would have allowed the Plaintiff more than just the weekend to

---

[1] A case following *Torrez, Wright v. Southwestern Bell Telephone Co.*, 925 F.2d 1288, 1293 (10th Cir. 1991), is illustrative in this context.  There, the 10th Circuit cited with approval a case holding that "an intent to waive all discrimination claims can be inferred from the fact the plaintiff signed a release waiving 'any and all claims' against his employer <u>after he had filed employment discrimination claims with the EEOC</u>." (Emphasis added.)  In other words, courts are much more likely to find a voluntary relinquishment of a right that has already been asserted prior to the release than they are to find a waiver of a right that the employee has not yet asserted and may not even be aware of.  This case presents the latter situation.

deliberate had she requested it, yet nothing in the record indicates that he conveyed this fact to her. Similarly, although there is no clear <u>factual</u> dispute in the record before the Court as to whether Defendant Stano encouraged the Plaintiff to obtain legal advice, the undisputed facts indicate that Defendant Stano's "encouragement" to the Plaintiff was ambiguous. Defendant Stano characterized his understanding of this portion of their meeting as follows: ". . . I certainly would have given her time to look at them or bring it to whomever, her husband, lawyer, whomever." Mishler offered a similar assessment: "I remember Mr. Stano telling her that she could take them home. She could have them reviewed by an attorney. She could have them reviewed by her husband or by anybody, anybody, really, that she wanted to review them." On these facts, the Court cannot find that, as a matter of law, such ambiguous "encouragement" necessarily tips this factor in favor of the Defendants; rather, the conclusions to be drawn from these undisputed facts and the interplay among those conclusions and the other *Torrez* factors are matters for the jury.

The record also reflects that, at least subjectively, the Plaintiff felt economic pressure to sign the release. The Plaintiff understood from Defendant Stano, that if she did not sign the release, she would be terminated and would lose her health insurance coverage. This understanding conflicts with Mr. Stano's deposition testimony that if the Plaintiff did not resign, he "definitely" would not have terminated her, and would have instead discussed her need for improvement once she returned from leave. Although economic pressure is not a formal factor

10

recognized in *Torrez*, a jury could conclude that undue pressure placed on the Plaintiff by Defendant Stano prevented her from making an informed and voluntary waiver of her rights.

In considering the evidence pertinent to these factors, individually or collectively, a reasonable jury could conclude that the Plaintiff did not knowingly and voluntarily waive her employment discrimination claims.   Accordingly, the Court finds that with regard to the voluntariness of the purported waiver, there are genuine issues of fact in dispute and the motion must be denied.[2]

For similar reasons, the portion of the Defendants' motion that seeks summary judgment on the Plaintiff's substantive claims must also be denied.  The Defendants contend that the Plaintiff cannot establish a *prima facie* case of discrimination because she voluntarily resigned. However, the voluntary resignation was made in conjunction with the written release of claims. To the extent that there is an issue of whether the release was voluntary, there is a correlative factual issue as to whether Plaintiff's resignation was voluntary or involuntary.  As a consequence, the Defendants' motion is denied in its entirety.

---

[2] Although not argued, the Court also has doubts as to whether a waiver of an FMLA claim can ever be enforceable.  *See* 29 C.F.R. § 825.550(d); *Taylor v. Progress Energy, Inc.*, ___ F.3d ___, 2005 WL 1684047 (4th Cir., July 20, 2005).

11

## CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment **(# 31)** is

**DENIED**.

Dated this 9th day of August, 2005.

**BY THE COURT:**

Marcia S. Krieger
United States District Judge

12